All right, our final case for this morning is Arreola-Ochoa against Attorney General Merrick Garland, 21-11-79. And we'll begin with Mr. Budzinski. Good morning, Your Honors. In this case, we have two issues before the court today, one involving the date and time defect of the notice to appear, and the second involving the hardship issue. As to the first, I've made two arguments, the first being jurisdictional, and I recognize that this court has considered this issue a number of times and rejected it. But I do think the argument we make here is a little bit different in that the statute providing the jurisdictional hook is not 8 U.S.C. § 1229, but 8 U.S.C. § 1229A. That statute states that the I.J., the immigration judge, shall conduct proceedings for deciding inadmissibility or deportability of the noncitizen. It also states that it shall be the sole and exclusive procedure for determining admission or removal. This statute, I believe, speaks to jurisdiction, to subject matter jurisdiction, and to the adjudicatory authority of immigration judges. It grants authority to decide admission or removal, but limits that authority to those noncitizens who are in removal proceedings. This, of course, raises the following question as, who is in removal proceedings? And I think this is where we turn back to 1229, and that answers the question. That section— I just have to ask, I mean, why doesn't your theory just kick the ball down the road a little bit? You still have to go back to 1229. And I would say, I have no problem with the notion that you're preserving this kind of argument, because by the time the Supreme Court has decided first Pereira and then Niz Chavez, for all I know, they may be open to the idea that all of the requirements of the notice to appear must be satisfied in order to vest jurisdiction in the immigration authorities. That's not what we found, but it wouldn't be the first time they've disagreed with something I've said. But right now, it seems to me that you're really kind of stuck with what we have, but maybe a slight glimmer of light with our bosses. Yeah, and I do recognize that in this argument, I am coming back to 1229. And the reason for that is I think the trigger here is when is someone in removal proceedings, and there's really no other good statute to turn to other than 1229 at this point. As it's entitled initiation of removal proceedings, it requires a notice to appear, and that notice to appear requires the date and time of proceedings. And in Niz Chavez, the Supreme Court recognized that the notice to appear is the case initiating document. So if it's the case initiating document, presumably that's the document that places someone in removal proceedings, which is needed for jurisdiction of the immigration judge. And as we know from Pereira, a notice to appear without a date or time is not a notice to appear at all. And without this notice to appear, our argument is that the person is not in removal proceedings, and accordingly, the immigration judge lacks authority to decide their admission or removal under 1229A. However, even if that's wrong, even if this is not a jurisdictional issue, termination was still required under Ortiz-Santiago because the objection was timely. Now, I recognize that I'm asking the court to do some line drawing here. And if I just want to make sure I understand this correctly, that the issue was first raised about three years after a specific date and time was provided, and one business day before the scheduled merits hearing three years later, right? That is an accurate assessment of the timeline, Your Honor. If prejudice is relevant, is there any on your side? Prejudice is not relevant. I don't see any on our side. Do you see any prejudice to the government in allowing such a late objection to shut down the proceedings? I mean, assuredly, they put in a lot of work to prepare for their merits or their trial. So the prejudice is that they devoted time and expenses and resources to preparing for that trial. From other areas of civil practice, I'm reminded, for example, of kind of last-minute assertions, for example, of, let's say, an arbitration provision or a venue form selection clause in a contract or something, where any judge would say, with this kind of timing, are you kidding? And I recognize that. What I would say there is that in some of those scenarios, and my background is more in criminal defense, so with respect to something like motion dismiss and indictment or an information, there is a statute that's going to articulate when those things need to be filed. Sometimes objections can be filed pretrial, some all the way up through trial, and it's really going to be the choice of the person making the objection. You could file that before trial. Counsel, isn't the answer that's more readily available is that Ortiz-Santiago has told us that no one needs to show prejudice? Correct. You don't need to show prejudice if the objection is tied. And I think we all agree. Sorry. No, okay. And the government was given a chance to respond to the motion. They were. They were. If I'm not mistaken, they were able to respond the same day. They had a response prepared in writing that they were able to file the same day. I could be mistaken, but they were able to respond, yes. And regarding this timeliness, I think we all agree that after the immigration judge's decision is going to be too late, but right at the beginning is going to be fine. Where in between how long that window stays open is the question here. In Mraz-Saucedo, the court wrote that the relevant inquiry is whether the objection was raised during proceedings for the immigration judge after receiving the notice to appear. I think this suggests or at least doesn't foreclose the possibility that this is going to be timely all the way up until the immigration judge makes a decision. That said, there are a couple of cases that use the phrase at the outset. I think those cases are distinguishable and that that phrase is largely dicta. One was decided where the objection was raised a month after the person was taken into custody. That's clearly timely and there was no occasion to consider whether a later one would also be timely. Mejia-Padilla, the objection was made years after the case was closed and decided. So there's really no occasion to decide whether an earlier one during proceedings would also be timely. Counsel, why does that language at the outset of the proceedings have to be dicta? Why can't it mean before the immigration judge makes a decision on the merits or even discusses the merits? Well, I don't think in either. Well, concedingly, in Dara Rosa, the objection was made at the outset. I think it's dicta because it doesn't necessarily preclude a later objection. By saying it was OK at the outset doesn't necessarily mean that it wouldn't also be OK later to make that objection, if that makes sense. Moving to the hardship issue with the little time I have left here. Following Guerrero-Lasprilla, I believe this court now has jurisdiction to review mixed questions of law and fact. Here we have one child, Allison. The older one is aged out. She's a 12-year-old girl, and she currently has the benefit of living in a particularly large, tight-knit, interdependent family. She not only lives with her immediate family, her mother, her father, and her sister, but her sister's daughter, her half-sister, and her half-sister's two daughters. This is eight people, one family unit, one roof. And Mr. Arriola is the keystone of this family. He provides for most of the family's material needs. I think some of the testimony I made was a written statement that said, you know, without him, they wouldn't have a place to live. You know, filling his shoes, I think, is going to be near impossible. Allison's sister and half-sister, they're both single mothers. Asking them to take on additional burdens or responsibilities to help care for Allison is going to be a difficult task at best. Her mother suffers from migraines, has hearing loss. Expecting her to, you know, double or take on more responsibilities is going to be unrealistic as well. Isn't her mother also undocumented? Correct. I should note, it's not in the record. She's actually in the process of applying for residency. I don't believe that has been granted yet, but outside of the record, I do believe she's applying currently. But the only problem, you know, you're about to run out of time. I mean, these are all serious arguments, but the board said, you know, and the immigration judge said, really, it wasn't the board. This is just what happens when people get removed. You know, what's so unusual about this? Now, that may be a very sorry comment, but it's perhaps true. So, I think the finally dynamic here is different. This is a very interdependent and large family. Allison has, you know, she's in a great position right now. She's got a lot of people looking out for her, and she has a lot further to fall than someone in a more typical immediate family unit that's more independent. So, I think she has more to lose than an ordinary case, if you will. Okay. Thank you very much. Mr. Staltzer. Good morning, Your Honors. May it please the Court, Rob Staltzer on behalf of the AG. Like my brother counsel, I'll start with the motion to terminate issue. And just to start with, we don't believe that the defect in the notice to appear is jurisdictional. And that follows straight from Ortiz-Chavez and also from Pereira itself. Because if it were jurisdictional, then the Supreme Court wouldn't have remanded in Pereira. They wouldn't have used Chavez. They would have simply said, this must be terminated, right? And that's the case here, too. This Court was very clear in Ortiz-Santiago that the Immigration and Nationality Act doesn't say anything about the immigration jurisdiction. And I think we should follow that. The next part of that is, of course, that the question is, under Ortiz-Chavez, whether objection was made timely to the defective notice to appear. Now, I am interested in that. Because your approach seems to take timeliness to be something that I'll say is analogous to Federal Rule of Civil Procedure 12b2, the lack of personal jurisdiction. And by that, I mean only, if you don't raise personal jurisdiction at the very first opportunity that you have in the litigation, then you've waived the defense. And the governance position seems to be that this is the same thing. If you don't pop right up at the very first opportunity and say, this is a defective notice to appear, I'm gathering that you think it's waived. But there is no rule in the immigration field that looks like Rule 12b2. And I don't know why you couldn't allow people to raise it while it is still an active case before the immigration judge, maybe subject to a case scheduling order or something like that. But I don't know where you get the first possible opportunity rule. I don't think I said first possible opportunity in my brief. But certainly, this court's president used the word at the outset. But the outset could be the early proceedings. The outset could last a year if there's an initiating hearing. And then the immigration judge says, we'll meet again in a year and see how discovery has gone and the like. The second meeting might still be at the outset. The judge hasn't done a thing other than just set some dates. Your Honor, I don't disagree with that necessarily. I would point in this case, however, there were three years that elapsed, including an intervening hearing like you're talking about, where petitioner with counsel appeared, conceded service of the notice to appear, conceded removability, and then informed the immigration judge that they would be seeking an application for relief. Filed two versions of the application and would later file another one, all before finally raising for the first time the idea of terminating because of the notice to appear. At that point, literally, the immigration judge said, are you ready to go to merits? And he said yes. And the immigration judge put it on the merits docket. And it was, just as Judge Hamilton said, it was literally the one business day before in the afternoon when the motion to terminate was filed. It was like a Friday to Monday, wasn't it? It was a Friday to Monday situation. And in fact, that physical motion, which was filed at the window of the immigration court clerk's office, didn't even make it to the immigration judge's courtroom until the end of the merits hearing. At page 111 of the record, the judge notes, oh, by the way, during the course of the hearing, Mr. Kusteno, our court staff did locate the motion to terminate. So thank you. And I'm just going to return the copy that you gave me. I mean, that motion didn't even have time to reach the judge before the merits hearing. But counsel, you're not disputing the timeline here that Pereira was decided in June of 2018. And they were facing that merits hearing on July 23. So we're really not talking about a three-year. One way of looking at it is not to look at a three-year delay, but one of when in a month. I hear you, Your Honor, but this court has already made clear in Ortiz-Santiago that applicants were expected to make Pereira-like arguments before Pereira came out. In other words, the court has been very clear in Ortiz-Santiago and the line of cases that followed it that applicants cannot sit on this objection when they receive the notice to appear that contains the defect. That's when at some point at the outset, the court said, the court has used the word promptly. And again, three years elapsed here before, including an intervening hearing. And petitioner didn't raise objection again until the day before the merits hearing. The court, I think, has used the phrase lurk, said applicants cannot lurk on this objection. So that's why, I don't know, it doesn't have to be the very first day they get the notice to appear, but certainly by the first hearing or the first time that you've got a lawyer in front of the judge and say, hey, do you concede service of this notice to appear? The moment they said, well, yeah, we concede service and we concede removability. I mean, there's no question that petitioner is removable here. They conceded it. And now they, after putting the immigration judge and DHS and their own attorney, for that matter, to the work of preparing an application on the merits, did they come along and say, oh, no, wait, we actually want to raise this objection that we failed to make before. That is the forfeiture under the claims processing rule of Ortiz Santiago. Mr. Stolzer, how should we apply that, in your view, to somebody who doesn't have a lawyer in these proceedings? I would say certainly they still have an obligation to raise the objection. Again, I don't think they have to raise it in writing. Maybe they have to raise it in court. At some point, they do need to say, hey, this is an error in my notice to appear. I certainly would hope and expect the immigration judges, you know, are noticing this now. Certainly at this point, you know, post-Perera, everybody's looking at their notice to appear to make sure that they're full and complete. So I don't know that we're going to see that many, you know, uncounseled cases like that anymore, Your Honor. But a pro se responded in those proceedings could consent to or, in essence, could waive in response to questions from the IJ? I think so, yes, Your Honor. And for the reason that, I mean, we certainly hold even at this level, a pro se appellant or pro se petitioner can still forfeit arguments by failing to raise them in their briefs. We do hold them to the ordinary litigation standards, perhaps with a little bit of, I mean, we're supposed to liberally construe their filings. But they are still, you know, required to otherwise fulfill the general rules of court. Very quickly, I'll turn to the hardship issue. We don't believe the court has jurisdiction to review this discretionary hardship determination. Petitioner here has been pointing to the changed family dynamic, the idea that this is a very tight knit family. And that's asking the court to reweigh the hardship level. Petitioner hasn't actually pointed to the evidence of that. What is it, where in the record can we find that Allison will face a particular hardship substantially beyond, right? The standard has to be substantially beyond the ordinary hardship of removal. We should be able to go to the record and find it. Something that says Allison will be super harmed. So could I ask you, though, I mean, on your jurisdictional argument, this court had taken a very strict and rigid view to the subpart D requirements. But then the Supreme Court decided Guerrero-Lasprilla against Barr in 2020. And as I read it, it said, you know, hold on. You know, there is a legal standard. And when you have application of law to fact or whether you like to call them mixed questions, then we can review. That's a legal issue, too, under the scope of D. It's just one that's reviewed, of course, quite deferentially. I'm not sure a lot of the time it would put the government in that much different position. But it will sometimes because it means the substantial evidence standard is going to be used. Why isn't this that sort of situation? We're trying to say, okay, there's a standard, a legal standard that needs to be met for hardship. And the only question is did these facts, which nobody is really contesting, did these facts meet that legal standard? Was the application of law to fact here correct? My understanding, Your Honor, following Martinez-Baez was that the court had decided that the discretionary determinations are still beyond review. But I think the way the court phrased it was antecedent legal determinations do come within the court's review. And that was the problem in Martinez-Baez, right? Martinez-Baez, the hardship problem was the immigration judge there. I think the phrase was disregarded a swath of evidence that related specifically to hardship. But here, Petitioner hasn't pointed to any evidence the immigration judge has disregarded. But that's a different problem. That's a problem of procedural irregularity, which is always a question of law. This case is a somewhat different thing. It's like trying to decide whether undue influence has been exercised or whether any legal standard has been properly applied, any kind of mixed question of law or fact. And our position putting the procedural flaws to one side prior to Guerrero-Lasprilla was that, no, you couldn't review that. These things were all just totally within the discretion of the board. But obviously, if the Supreme Court has changed where the goalposts are, we need to pay attention to that. And it looks to me, if review is possible, especially the tenor of that opinion even, how much review are we shutting off? Why isn't this a situation where it's an application of law to fact? Nobody is contesting the facts found by the board. The question is, do they legally add up to hardship? I don't understand Petitioner to be making that argument, Your Honor, because their argument is that the immigration judge didn't give enough weight to the hardship because they're a super tight-knit family. That sounds like weighing of evidence to me. That doesn't sound like adding up evidence to see if they meet a legal standard. And that's the thing I would say was still beyond the court's jurisdiction, even post-Guerrero-Lasprilla. My time has expired. If there are no other questions, Your Honors, thank you very much for your time. All right. Thank you very much. I will ask you, Mr. Podzinski, I think you might have run out of time, but if you want a minute to respond, we'll give that to you. Thank you, Your Honor. Just I would note one thing. The court was discussing the lack of anything within the Immigration and Nationality Act, setting a timeframe to file these objections to the notice to appear. And given that absence or silence by the statute, perhaps the rule of lenity would be appropriate here and weigh in favor of giving the noncitizen more time having a larger window to file these objections given the statutory silence. And if there are no questions, Your Honor. All right. Thank you very much. Thanks to both counsel. The court will take the case under advisement, and we will be in recess.